UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>VLADIMIR ABALOS,<br><br>                              Defendant. | Case No.:  18-cr-01671-L<br><br>**ORDER:**<br><br>**(1) DENYING MOTION FOR COMPASSIONATE RELEASE [ECF NO. 67.]**<br> and<br><br>**(2) DENYING REQUEST TO DIRECT BUREAU OF PRISONS TO RECALCULATE SENTENCE TERM [ECF. 72]** |

    On June 2, 2021, Defendant Vladimir Abalos, proceeding pro se, filed the present Motion for Compassionate Release requesting a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), in light of the heightened health risks associated with being incarcerated during the COVID-19 pandemic.  (Motion [ECF No. 67.]  The Government filed a Response and Opposition to the Motion on July 6, 2021.  (Oppo. [ECF No. 73.])  Defendant's Motion is denied for the following reasons.

//

## I. BACKGROUND

On January 28, 2019, Defendant was convicted of Distribution of Methamphetamine, in violation of 21 U.S.C. § 841. On January 27, 2020, this Court sentenced Abalos to 110 months' imprisonment, and three years of supervised release. Defendant is incarcerated at USUP Canaan in Pennsylvania and is scheduled to be released on September 5, 2026

## II. ANALYSIS

A court may modify a defendant's sentence "after considering the factors set forth in § 3553(a) to the extent applicable" if it finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13. The First Step Act was enacted in December 2018, with the stated intention of increasing the availability and use of compassionate release for certain individuals. *See* Pub. L.No. 115-391 § 603(b)(titled "INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE"). Importantly, the Act paved the way for defendants to file compassionate release motions directly with the court, as opposed to relying on the BOP to file those motions on their behalf. *Id*.

### *A. Exhaustion of Administrative Remedies*

Under 18 U.S.C. § 3582, as amended by the First Step Act, Pub. L. No. 11-391, 132 Stat. 5194 (Dec. 21, 2018), a court may modify a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub. L.No. 115-391, 132 Stat. 5194, §603.

In April 2021, Defendant filed a request for compassionate release with the warden, which was denied on May 25, 2021. Defendant has therefore satisfied the exhaustion requirement, and the Court considers the merits of his request.

### B. Extraordinary and Compelling Reasons

Defendant argues that he has a combination of serious medical conditions including asthma, hepatitis C, and obesity which greatly increases his chance of serious illness or death from COVID-19. (Motion at 13). Abalos contends that these medical conditions constitute "extraordinary and compelling reasons" under the First Step Act and 18 U.S.C. § 3582, which qualify him for the relief he seeks. (Mot. at 25).

The Government counters that Defendant cannot meet the high bar of demonstrating that he has extraordinary and compelling reasons to grant the requested relief based on his medical conditions. (Opposition at 19). First, the Government argues that Abalos' asthma is not in the moderate to severe category which the Centers for Disease Control ("CDC") has designated as a risk factor for severe illness from COVID-19. (*Id*.) Next, the Government points out that the CDC has not indicated that Hepatitis C is a risk factor for severe illness from COVID-19, and that most people can be cured within 8 to 12 weeks with treatments. (*Id*. at 21). Finally, Abalos has a BMI of 29, which puts him within the CDC's most recent list of medical conditions that can make him more likely to get seriously ill from COVID-19, however, the Government argues that this factor alone is not sufficient to qualify as an extraordinary and compelling reason because it does not reflect on his overall health or vulnerability to become seriously ill if he contracts COVID-19. (*Id*. at 23).

The Court recognizes that COVID-19 has created a serious health threat across the globe, throughout the United States, and particularly in the confined conditions of the BOP system. Although prisons have become a hotspot for COVID-19 outbreaks, the BOP has taken precautions to limit the spread of COVID-19 in its facilities, implementing detailed protocols beginning March 13, 2020, which are updated frequently, in accordance with its Coronavirus (COVID-19) Action Plan. The Action Plan calls for

limited inmate movement within facilities, required face-coverings, handwashing, and quarantine for newly admitted individuals or those returning from court hearings.[1] The administration of the COVID-19 vaccine has further reduced the transmission of the virus, and to date over 83,000 inmates and over 19,000 staff have been fully vaccinated. *See* Federal Bureau of Prisons, 200,000 Doses of COVID-19 Vaccine Administered, https://www.bop.gov/resources/news/20210715_vaccine_200k.jsp.

To determine whether Defendant's medical conditions qualify as extraordinary and compelling reasons for relief, section 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant," even though it is no longer considered a binding policy statement. *See United States v. Aruda*, 2012 WL 1307884 (9th Cir. April 8, 2021).

First, the policy contemplates that a defendant who is suffering from a terminal illness, such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia" may qualify. U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Second, a defendant can meet the standard if he or she is:

> (I)   suffering from a serious physical or medical condition,
> (II)  suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13, cmt. n.1(A)(ii). Third, a defendant may qualify on the basis of age if he or she is (1) at least 65 years old; (2) experiencing "a serious deterioration in physical or mental health because of the aging process"; and (3) has served at least 10 years or 75% of the sentence, whichever is less. U.S.S.G. §1B1.13, cmt. n.1(B). Fourth, certain

---

[1] *See* https://www.bop.gov/coronavirus/covid19_status.jsp.

family circumstances may be considered extraordinary and compelling. U.S.S.G. § 1B1.13, cmt. n.1(C). Last, the Commission provides that the BOP may identify "other reasons" that qualify as "extraordinary and compelling" reasons "other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D).

Here, Defendant's medical records do not demonstrate that he suffers from medical conditions which put him at increased risk for serious illness or death due to COVID-19, and which qualify as extraordinary and compelling reasons for relief. According to his medical records, Defendant Abalos has asthma which presents with exercise and at night, and an Albuterol inhaler has been prescribed to be used as needed for this condition. (Mot. Appendix at 21). The CDC has recognized that "moderate to severe" asthma may increase the risk of serious illness due to COVID-19, but there is no indication in the records that Abalos' asthma falls within this category.[2] Instead, it appears his asthma is well-controlled within the prison environment.

With regard to Abalos' claim that he has Hepatitis C, his medical records indicate that he was treated for Hepatitis C in 2015. (Mot. Appendix at 12). However, there is no indication in his current medical records that Abalos is suffering from Hepatitis C. Even if Defendant was actively infected with Hepatitis C, the CDC states that only that persons with Hepatitis C "**might be at increased risk for severe illness from the virus that causes COVID-19**." See CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html. (emphasis in original). Therefore, it is inconclusive at best whether Defendant would be at increased risk of severe illness due to COVID-19 if he had Hepatitis C. As a result, the Court finds no support for Defendant's contention that he is at increased risk due to Hepatitis C.

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The medical records submitted for Defendant show that as of November 2020, he was 5'6" and weighed 180 pounds, which results in a BMI of 29. (Mot. Appendix at 14). At this BMI, Defendant is categorized as "overweight" but not "obese." This is significant because the CDC states "The risk of severe COVID-19 illness increases sharply with elevated BMI." *See* CDC, Overweight and Obesity, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity. As a result, Defendant is not in a recognized high-risk group.

Defendant argues that the comorbidities of asthma and overweight make him more vulnerable than if he had only one of those conditions. While some courts have found the combination of obesity and other medical conditions that increase the risk of severe illness or death from COVID-19 qualifies as "extraordinary and compelling reasons" to grant relief, these cases generally concerned defendants who qualified as obese, which Defendant does not, and had severe asthma, or other serious underlying conditions. *See United States v. Rodriguez*, 476 F.Supp. 3d 1071, 1074 (S.D. Cal. 2020)(defendant's obesity along with asthma and depression constituted extraordinary and compelling circumstances to grant motion).

Also mitigating against increased vulnerability is the fact that Defendant has received the COVID-19 vaccine, which decreases his risk of contracting COVID-19, and reduces his risk of severe illness if he falls into the small percentage of people who become infected despite vaccination. *See* COVID-19 Vaccine Breakthrough Case Investigation and Reporting, https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html.

For the foregoing reasons, the Court finds Defendant's BMI, along with his intermittent asthma, do not constitute "extraordinary and compelling reasons" warranting a sentence reduction under section § 3282(c)(1)(A).

//
//

### C. § 3553(a) Factors

Under Section 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary, ... (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(A)-(D). In addition to other factors, the sentencing court must also consider, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" § 3553(a)(1), (6). Section 3142(g) encompasses some of these factors, as noted above.

Defendant argues that the § 3553(a) factors weigh in favor of the Court granting his request. (Mot. at 25). Specifically, Abalos contends that he is 47 and statistically unlikely to recidivate. (*Id*. at 17). He further argues that he has participated in programs and classes in an effort to improve himself. (*Id*. at 22). Upon his release, Defendant Abalos states that he has a safe home, loving family and social support. (*Id*. at 25). Abalos contends that the unexpected and extraordinarily difficult circumstances of the pandemic, along with his comorbidities, and the fact that his sentence was incorrectly calculated resulting in him losing 15 months of custodial time, weigh in favor of granting relief. (*Id*.)

In response, the Government argues that the facts and circumstances of the offense weigh against granting relief because Abalos distributed methamphetamine, an extremely dangerous and addictive controlled substance, as part of an ongoing relationship with another San Diego gang member, codefendant Leandro Legaspi. (Oppo. at 24). This conduct was only part of a thirty-year history of criminal conduct that includes approximately 10 felony and 4 misdemeanor convictions, according to the Government. (*Id*.) The Government contends that Abalos' long and serious criminal history, in

combination with his affiliation with gangs and drug distribution, reflect poorly on his risk to public safety and risk of reoffending. (*Id*. at 24-25).

The Court first considers the nature and circumstances of the offense. As noted above, Defendant was convicted in the present case for distributing a large quantity of methamphetamine, an extremely dangerous controlled substance. Methamphetamine is a highly addictive substance that has well documented devastating effects on families and communities. *See* Drug Enforcement Agency, National Drug Threat Assessment, https://www.cdc.gov/mmwr/volumes/69/wr/mm6912a1.htm. As such, the nature of Defendant's crime weighs against any sentence reduction.

Defendant Abalos' criminal history also factors against a sentence reduction. When he was 17, Abalos was convicted of assault with a firearm during a gang related altercation. (PSR at ¶ 7). In the almost 30 years following that conviction, he has been convicted of multiple felonies and violated parole numerous times, resulting in 33 criminal history points, which puts him in a CH Category of VI. (*Id*. at ¶¶ 36-68). In light of Defendant's long criminal history, involvement with drugs, and affiliation with gangs, the Court finds that granting a sentence reduction would pose a threat to public safety. *See* USSG § 1B1.13(2).

Abalos states that he has taken course while incarcerated, and that he has family support upon his release. It is commendable that Abalos is taking advantage of the educational opportunities available to him, particularly in light of the fact that he claims other inmates shun those who voluntarily participate in programs. However, this factor does not outweigh the characteristics of his offense, his criminal history, and potential danger to the community. Accordingly, reducing Defendant's sentence is not supported by the § 3553(a) factors.

For the reasons stated above, the Court DENIES Defendant's Motion for Compassionate Release.

//
//

### III.  REQUEST FOR BUREAU OF PRISONS SENTENCE RECALCULATION

Defendant contends that he is not receiving credit for the time he served in state custody despite the fact that the Judgment this Court issued directed that his federal sentence be run concurrent to any other state sentence in cases numbered SCS291421 and SCS2955411. (Motion at 1). In light of this situation, Defendant requests that this Court issue an order directing the BOP to adhere to the Judgment in this case, or in the alternative, to issue an amended judgment providing credit for time served in state custody. (*Id*.) The Government responds that BOP records correctly reflect that Abalos' federal sentence has been computed as "concurrent" which is the Order of this Court. (Oppo. n. 23 at 25).

As a primary matter, challenges such as these are more properly raised in a petition under 28 U.S.C. § 2241. However, this Court notes that the Judgment in this case correctly stated that Defendant's federal sentence was to run concurrent to his state court sentences. It states:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of: ONE HUNDRED TEN (110) MONTHS CONCURRENT TO ANY OTHER SENTENCE IMPOSED IN CALIFORNIA STATE SUPERIOR COURT CASE NUMBERS SCS291421 AND SCS295411."

(Judgment [ECF No. 56.])

In light of the fact that the Judgment orders the federal sentence to run concurrent to the state sentence, it is unnecessary for this Court to amend the Judgment.

Defendant further argues that this Court may modify his sentence to reflect the time he spent in state custody under U.S.S.G. §5G1.3(b). Defendant claims he served three years of a six-year state term of imprisonment after he received the judgment and sentence in this case but that the BOP has not credited that time against his federal

9

sentence. (Mot. at 1). Section 5G1.3(b) states that a defendant's sentence can be adjusted by the Court to reflect the period of imprisonment already served on an undischarged term of imprisonment where the Bureau of Prisons will not credit that time served. Although this Court cannot direct the BOP to calculate sentences, it strongly recommends that the BOP assess Defendant's time in state custody and recalculate his federal sentence, if necessary, to reflect the Court's intention to run the sentences concurrent. *See* 18 U.S.C. §3585(b)

IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [ECF No. 67], and **DENIES** Defendant's Motion for Order Directing Bureau of Prisons to Adhere to Judgment without prejudice. [ECF No. 72.]

**IT IS SO ORDERED**

Dated: September 3, 2021

Hon. M. James Lorenz
United States District Judge